**WALTER TANTZEN, INC.**

and

**Insurance Company of North America, Petitioners,**

v.

**Thomas SHAUGHNESSY**

and

**Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 1450, Docket 79–4034.

United States Court of Appeals, Second Circuit.

June 25, 1980.

Before MESKILL, Circuit Judge * and WYZANSKI, Senior District Judge.**

WYZANSKI, Senior District Judge:

On April 21, 1980 the Supreme Court of the United States, —— U.S. ——, 100 S.Ct. 1829, 64 L.Ed.2d 257 vacated the judgment this court had entered in this case on June 29, 1979 pursuant to its opinion reported in *Walter Tantzen, Inc. et al. v. Thomas Shaughnessy et al.*, 601 F.2d 670 (2nd Cir. 1979) and remanded the case for further consideration in light of *P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979).

As shown in our June 29, 1979 opinion, this case came before us on the petition of Walter Tantzen, Inc. [Tantzen] and its insurer for review of the December 29, 1978 order of the Benefits Review Board [BRB], United States Department of Labor, awarding Shaughnessy compensation under the Longshoremen's and Harbor Workers' Act [LHWCA], as amended in 1972, 86 Stat.

---

\* Circuit Judge Gurfein, who presided over the panel when the appeal was first argued and decided, died on December 16, 1979 before this case had been remanded by the Supreme Court of the United States.

\*\* Of the District of Massachusetts, sitting by designation.

1251, 33 U.S.C. § 901 *et seq.* The briefs presented the sole question whether Shaughnessy was an "employee" within the meaning of § 2(3) of the LHWCA, 33 U.S.C. § 902(3).[1]

In our June 29, 1979 opinion, 601 F.2d 670 (2nd Cir., 1979), we did not pass upon that contention, but ruled that the award had to be set aside on the ground that there was no proof that the employer had any employee "employed in maritime employment," as that term is used in § 2(4) of the LHWCA, 33 U.S.C. § 902(4).[2] In our then view "maritime employment" was an exclusively geographic term, referring to employment on navigable water, and there being no proof that the claimant or any other of Tantzen's employees was employed on navigable waters, we held that the Act did not impose any liability upon Tantzen.

On November 27, 1979 in *P. C. Pfeiffer Co. v. Ford, supra,* the Supreme Court held that as used in § 2(3) and § 2(4) of the LHWCA "maritime employment" refers to occupational status.

Inasmuch as we were mistaken in giving to the term "maritime employment" as used in § 2(4) a geographic meaning, we must now direct our attention to the question which we did not previously decide: that is, whether the *claimant* was an employee within the meaning of § 2(3) of the LHWCA.

The Administrative Law Judge [ALJ] found that after longshoremen had unloaded bales of rubber from the ship and placed them inside the pier, Tantzen's personnel "move the commodity in position to be weighed, after which the bale is opened by means of pry bars and a cutting instrument to be inspected. The container is reclosed by Employer's [i. e. Tantzen's] men, and then the commodity is moved by longshoremen to its ultimate destination to be accepted by the consignee." On that finding the ALJ concluded that the claimant was engaged in maritime employment, and the ALJ entered a compensation order.

Upon appeal, the BRB held that the claimant was engaged in longshoring operations which were a type of maritime employment within the meaning of § 2(3) of the LHWCA, and upheld the ALJ's order.

When this case was previously before us we, without deciding the question, expressed a doubt as to whether on the record as it stood we could affirm the BRB's conclusion that Shaughnessy was engaged in longshoring operations. *Walter Tantzen, Inc. v. Shaughnessy,* 601 F.2d 670, 672–673, footnote 5 (2nd Cir. 1979).

Our doubts have now been set at rest by the method followed by the Supreme Court in affirming an LHWCA compensation award in *P. C. Pfeiffer Co., Inc. v. Ford, supra.* There the critical question was whether "longshoremen . . . would fasten military vehicles onto railroad flat cars if those vehicles went directly from a ship to the railroad cars," 444 U.S. 82, 100 S.Ct. 337. If that were the case, Ford would be entitled to have been regarded as engaged in maritime employment when he fastened to railroad cars at the warehouse vehicles which had been delivered to the port by ship, taken to the warehouse for storage, and there loaded onto flat cars which were to take the vehicles to their inland destination, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225. The Supreme Court in deciding that longshoremen would ordinarily fasten military vehicles onto railroad cars if those vehicles went directly from ship to railroad cars seems not to have relied upon,

---

1. The relevant statutory section defining "employee," with emphasis indicating the material added to the original statute by 1972 amendments, 86 Stat. 1251, 33 U.S.C. § 902(3) (1970 ed. Supp. V) provides:

    The term 'employee' *means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term* does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.

2. "Employer" was defined in 33 U.S.C. § 902(4):

    The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States [including any dry dock].

or required the BRB to have had, any specific evidence as to the issue. See footnotes 16, 1, and 2 at 444 U.S. 82, 72, 73, 100 S.Ct. 337, 332.

Following a like approach we conclude that Shaughnessy's activities in checking and inspecting cargo were longshoring operations, or their functional equivalent. Cf. *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 270–271, 97 S.Ct. 2348, 2360–2361, 53 L.Ed.2d 320 (1977).

We have an additional reason for affirming the BRB's order. The definition of "employee" in § 2(3) of the LHWCA refers to "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations . . ." Hence to come within § 2(3) a claimant need not be "engaged in longshoring operations." It is sufficient if he is in a "maritime employment" *ejusdem generis.* Surely Shaughnessy's activities are of the same generic type as the activities of a land-based longshoreman, inasmuch as in both cases the activities involve the physical handling of cargo on the pier after it has been discharged from the vessel and before it is delivered to the consignee.

*Petition denied.*